**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JAN 17 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, | No.   17-35381 |
| Plaintiff-Appellant, | D.C. No. 2:16-cv-00433-BLW |
| v. | |
| MARY FARNSWORTH, Forest Supervisor, Idaho Panhandle National Forest; et al., | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief Judge, Presiding

Argued and Submitted November 7, 2017
Portland, Oregon

Before:  FERNANDEZ, W. FLETCHER, and MELLOY,[**] Circuit Judges.

After a series of wildfires in 2015, the United States Forest Service proposed

and then adopted two projects—the Tower Fire Salvage and Restoration Project and

the Grizzly Fire Salvage and Restoration Project—that authorized removing certain

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Michael J. Melloy, United States Circuit Judge for the U.S. Court of Appeals for the Eighth Circuit, sitting by designation.

burned trees and reforesting areas within the Idaho Panhandle National Forests. Alliance for the Wild Rockies brought suit and sought a preliminary injunction to stop the Forest Service from implementing the two projects. The district court refused to issue a preliminary injunction, and Alliance appealed. This Court affirms.

To obtain a preliminary injunction in this context, Alliance must show "that there is a likelihood of irreparable harm; that there are at least serious questions on the merits [of its claim]; that the balance of hardships tips sharply in [Alliance's] favor; and that the public interest favors a preliminary injunction." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

Alliance first claims that the Forest Service failed to adequately involve the public in the two projects, as required by law. When proposing a project that will impact the environment, a federal agency typically must prepare an environmental assessment ("EA") that evaluates the project's potential environmental effects. 40 C.F.R. § 1501.4(b); see id. § 1508.9. When preparing the EA, "[t]he agency shall involve environmental agencies, applicants, and the public, to the extent practicable." 40 C.F.R. § 1501.4(b); see also id. §§ 1500.1(b), 1506.6(a). As the district court noted, the Forest Service undertook numerous efforts to involve the public in the projects. Based on "the totality of [these] circumstances," Alliance has not shown there are serious questions on the merits of its claim that the Forest Service did not adequately involve the public. Bering Strait Citizens for Responsible

2

Res. Dev. v. U.S. Army Corps of Eng'rs, 524 F.3d 938, 953 (9th Cir. 2008); see Cal. Trout v. FERC, 572 F.3d 1003, 1017 (9th Cir. 2009). Also, contrary to Alliance's argument, the plain text of 36 C.F.R. § 218.25(a)(1)(i) does not appear to require the Forest Service to conduct a public-comment period on a project's EA, rather than on the project itself. Alliance therefore has not raised serious questions on the merits of its claim that the Forest Service erred by conducting public-comment periods on the projects themselves, rather than on the EAs.

Alliance also challenges the emergency situation determinations ("ESDs") for the projects. As done by the district court, this Court reviews the decisions to issue the projects' ESDs under the arbitrary-or-capricious standard of review. After issuing a final decision for a project, the Forest Service typically must temporarily delay implementing the project. See 36 C.F.R. § 218.26 (requiring a ninety-day objection period). But the Forest Service may immediately implement the project when an ESD is issued that recognizes that at least one enumerated "emergency situation" related to the project exists. See id. § 218.21. Here, the Chief of the Forest Service issued an ESD for each project based on two such emergency situations, including hazards to human health and safety posed by the dead and dying burned trees. See id. § 218.21(b). Alliance challenges this asserted reason. Based on the risks from the dead and dying burned trees, however, the Chief's decisions to issue ESDs were neither arbitrary nor capricious. See FERC v. Elec. Power Supply Ass'n,

3

136 S. Ct. 760, 782 (2016); Yazzie v. EPA, 851 F.3d 960, 968 (9th Cir. 2017). Alliance thus has not raised serious questions on the merits of this claim.

Alliance last contends that the Forest Service erred by not preparing an environmental impact statement ("EIS") for either project. The Forest Service must prepare an EIS for a project after determining that the project is expected to "significantly affect[] the quality of the human environment." 42 U.S.C. § 4332(2)(C); see 40 C.F.R. § 1508.11. In evaluating the project's effects, the Forest Service must consider the project's context and intensity. 40 C.F.R. § 1508.27. Because the Forest Service determined that neither project would significantly affect the quality of the human environment, the Forest Service did not prepare an EIS for either project. Alliance challenges those determinations, which this Court reviews under the arbitrary-or-capricious standard of review. Based on the record, the Court concludes that the Forest Service conducted the requisite analysis of each project's context and intensity. See All. for the Wild Rockies v. Pena, 865 F.3d 1211, 1221 (9th Cir. 2017). Also, in rejecting the conclusions of scientific studies that Alliance presented regarding the projects' environmental effects, the Forest Service was "entitled to rely upon the reasonable views of [its] experts over the views of other experts." Ground Zero Ctr. for Non-Violent Action v. U.S. Dep't of the Navy, 860 F.3d 1244, 1254 (9th Cir. 2017) (citation omitted). Alliance thus has not raised serious question on the merits of its claim that the Forest Service erred by not

4

preparing an EIS for either project.

The Court concludes that Alliance has failed to show it has raised serious questions on the merits of its claims. <u>See</u> <u>Cottrell</u>, 632 F.3d at 1135. The district court's order denying the motion for injunctive relief is therefore AFFIRMED.